nsor & Associates
Reporting and Transcription, Inc.

Page 75

1      Q.    Because Mr. Epstein never came to your

2   dad's house, correct?

3      A.    Correct.

4      Q.    And no one who worked for Mr. Epstein ever

5   did something to your dad's tires, did they?

6           MR. LEOPOLD:  Objection.  Lack of

7           foundation, predicate.

8           Don't guess.

9   BY MR. TEIN:

10     Q.    It's not true that Mr. Epstein almost

11  killed your father, is it?

12          MR. LEOPOLD:  Objection.  Asked and

13          answered, lack of foundation, predicate.

14  BY MR. TEIN:

15     Q.    You can answer.

16     A.    No.

17     Q.    Now you told the police that you didn't

18  know who was in the car with you and ███████ on the day

19  you went to Epstein's house, didn't you?

20     A.    Yes.

21     Q.    And that was a lie, wasn't it?

22     A.    It's the truth.

23     Q.    You told the police that there was someone

24  in the car next to you and you specifically said you

25  didn't know her name, right?

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd., Suite 500 - West Palm Beach, FL 33401

**Censor & Associates**
Reporting and Transcription, Inc.

1        A.    Correct.  I do not know her name.

2        Q.    You said, "I don't know her name, but she

3    was dark like a Spanish girl."  Those were your words,

4    right?

5        A.    Yes.

6        MR. LEOPOLD:  Objection.  Asked and

7    answered.

8    BY MR. TEIN:

9        Q.    Who was in the car that day with you and

10   ████?

11       A.    Again, I do not know.

12       Q.    It was your good friend ████████,

13  wasn't it?

14       A.    No.  I don't know a ████████.

15       Q.    You lied to the police about who was in the

16  car with you and ████, didn't you?

17       A.    Incorrect.

18       Q.    Let me ask you some questions about who you

19  may have spoken to about this case.  All right?

20       A.    Go ahead.

21       Q.    Did you speak to your twin sister ████?

22       A.    Not in detail, but of course she knows;

23  she's family.  And yes.

24       Q.    What's her e-mail?

25       A.    I don't think she has an e-mail.

**Censor & Associates**
Reporting and Transcription, Inc.

1      Q.    What is her phone number?

2      A.    Oh, gosh.  I don't know off the top of my

3   head.

4      Q.    And what is her home address?

5      A.    She lives with my mom.

6      Q.    In Georgia?

7      A.    Yes, sir.

8      Q.    What about ████ boyfriend ██?  Did you

9   speak to him about Epstein's case?

10     A.    That's my mom's boyfriend.  My sister

11   doesn't have a boyfriend.  My mom's husband's name is

12   ████ so maybe you get them confused.

13     Q.    Do you know his phone number?

14     A.    No.

15     Q.    Where does he live?

16     A.    With my mom.

17     Q.    In the same house with her?

18     A.    Yes.  They're married.

19     Q.    So not boyfriend; husband?

20     A.    Yeah, husband.

21     Q.    Have you spoken to ████ about

22   what happened in Mr. Epstein's house?

23     A.    Not in detail, but he knows the basics,

24   yes.

25     Q.    What is his e-mail?

Censor & Associates
Reporting and Transcription, Inc.

Page 78

1      A.    I don't know.

2      Q.    What is his phone number?

3      A.    How is that relevant?

4      Q.    What is his phone number?

5      A.    561.719.2652.

6      Q.    What is his home address?

7      A.    I don't know.

8      Q.    Where does he live?

9      A.    In Palm Beach Lakes somewhere.

10     Q.    Ever been to his house?

11     A.    Yes.

12     Q.    You don't know what his address is?

13           MR. LEOPOLD:  Objection.  Asked and

14     answered.  She just said she doesn't know.

15           MR. TEIN:  Don't coach.

16           MR. LEOPOLD:  Objection.  Asked and

17     answered.

18  BY MR. TEIN:

19     Q.    You can answer the question.

20     A.    I don't know the exact address.

21     Q.    What street is it on?

22     A.    It's an apartment complex; its not a

23  street.

24     Q.    What's the name of the apartment complex?

25     A.    Something Cove.

Censor & Associates
Reporting and Transcription, Inc.

Page 79

1    Q.    What apartment number is it?

2    A.    I couldn't tell you.

3    Q.    When was the last time you went there?

4    A.    Just visited this past weekend.  That's the

5    first and last time I went there.

6    Q.    How about ███████████? Have you spoken

7    to him about your case?

8    A.    No.  We no longer speak.

9    Q.    What's his phone number?  Actually, we

10   already have his phone number and e-mail.

11         How about ███████████? Have you ever

12   spoken to her about your case?

13   A.    I don't know an ████████████

14   Q.    Have you ever met ███████████

15   A.    No.  But just to let you know, I don't

16   really know names.  If you have pictures of there faces I

17   could tell you.

18   Q.    All right.  Let me see if I can refresh

19   your memory.

20   A.    Okay.

21   Q.    Does it refresh your memory that ██████████

22   is the other girl who made allegations about Epstein, but

23   refused to show to the Grand Jury when she had to testify

24   about them under oath?

25   A.    No, sir.  I have no knowledge of any other

Censor & Associates
Reporting and Transcription, Inc.

Page 80

1    girls in this whole situation.  We're not allowed to know

2    each other.

3         Q.    I didn't get the last four words.

4         A.    We're not allowed to know each other.

5         Q.    And what about ███████████ Have you

6    of met her?

7         A.    No, sir.

8         Q.    Let's see if I can refresh your memory on

9    her.  She's the other person represented by your lawyer

10   Mr. Herman, who is suing Epstein for fifty million

11   dollars.

12        A.    I have no knowledge of her.

13        Q.    Never met her?

14        A.    Never met her.

15        Q.    ████████████?

16        A.    I don't know who that is either.

17        Q.    A person named ████████ who knows ████████?

18   Is that ████████████?

19        A.    I don't know, sir.

20        Q.    Do you remember making a statement to

21   Detective Pagan that's in the police reports?

22        A.    No, sir.

23        Q.    Have you read the police reports in this

24   case?

25        A.    Yes.

**Censor & Associates**
Reporting and Transcription, Inc.

Page 81

1    Q.   They're on the Internet, right?

2    A.   Yes, I think.

3    Q.   Were you surprised when the police reports

4    were released on the Internet containing your statements

5    that you had made to the police?

6    A.   Yes.

7    Q.   You didn't want to see that happen, right?

8    A.   No.

9    Q.   So you're saying you don't know a ███████

10   ████████?

11            MR. LEOPOLD:   Objection.   Asked and

12        answered.

13   BY MR. TEIN:

14   Q.   Does it refresh your memory that he was

15   somebody who had gone to jail for drugs and car theft?

16   A.   No, sir.

17   Q.   Someone who knows ███████?

18   A.   No.

19   Q.   You don't know if he met with Detective

20   Recarey?

21   A.   No, sir.

22   Q.   How about ███████?

23   A.   Yes, I remember.  I know who that is.

24   Q.   Did you ever speak to ███████ about what

25   happened at Mr. Epstein's house?

**Censor & Associates**
Reporting and Transcription, Inc.

Page 82

1        A.    He knows what happened four years ago.  He
2    doesn't know this is still going on today.

3        Q.    What's his address?  I'm sorry.  I have his
4    address.

5        A.    I don't know.

6        Q.    How about ███████████?

7        A.    ███████?

8        Q.    You know who that is?

9        A.    I know who that is, yes.

10        Q.    He's the one you stayed out drinking all
11    night one night last year when your dad reported you
12    missing?

13        A.    No, sir.

14        Q.    Remember the baseball game you were
15    supposed to go to?

16        A.    No, sir.

17        Q.    Did you speak to ██████████ about this
18    case?

19        A.    No, sir.

20        Q.    How about ███████████?

21        A.    That's my sister's ex-boyfriend.

22        Q.    He's the one with the sawed-off shotgun
23    with the obliterated serial number?

24        A.    Ask him.  I would not know that
25    information.

**Censor & Associates**
Reporting and Transcription, Inc.

Page 83

```
 1          Q.    Did you speak to ███████████ about this
 2    case?
 3          A.    No, sir.
 4          Q.    Have you spoken to ███████████ about this
 5    case?
 6          A.    No.  I don't know who ███████████ is.
 7          Q.    Did your parents speak to ███████████?
 8          A.    Ask my parents.
 9          Q.    Let's see if I can refresh your memory as
10    to who he is.  Okay?
11          A.    Uh-huh.
12          Q.    He's the Vanity Fair reporter who made a
13    financial arrangement with your father.
14          A.    I am aware of that.  And again, I was not
15    aware like that my dad did it until after it was done.
16    And I don't know the details about that.  I just know
17    what you know about that, like that they talked.
18          Q.    Tell me what you know about the financial
19    arrangement that ███████████ the Vanity Fair reporter,
20    made with your father.
21          A.    I don't know about the details at all.
22          Q.    How much money did ███████████ give to
23    your father?
24          A.    I don't even know he gave money to my dad.
25          Q.    I'm sorry?
```

**Censor & Associates**
Reporting and Transcription, Inc.

Page 84

1       A.    I didn't even know he gave money to my dad.

2       Q.    What do you know about the deal that ████

3 ████ has with your father?

4       A.    I only know they spoke on the telephone

5 once.  I don't know anything else.

6       Q.    When was that?

7       A.    This was a while ago, a year or two -- or a

8 year ago.  I honestly don't know.

9       Q.    Did ████████ the Vanity Fair

10 reporter, offer any money to your father?

11      A.    I don't know.

12      Q.    Did ████████ the Vanity Fair

13 reporter, give you any money?

14      A.    No, sir.

15      Q.    Did he offer you any money?

16      A.    No, sir.  Never spoke to him.

17      Q.    What reporters have you spoken to?

18      A.    Zero.

19      Q.    What about your family members?  What

20 reporters have they spoken to?

21      A.    The whole Palm Beach County, obviously, as

22 you can see in that newspaper.

23      Q.    Tell me -- let's go through each one that

24 you remember.  Other than the Vanity Fair reporter, ████

25 ████ what other reporters have any member of your

nsor & Associates
Reporting and Transcription, Inc.

Page 85

1    family spoken to?

2           A.    I don't know.  And I know my mom has spoken

3    to zero.  My sister spoke to zero.  My father and

4    stepmother, I wouldn't know.  You'd have to ask them.  I

5    don't contact them.

6           Q.    Well, I just want to know -- I don't want

7    you to -- I want to know what's in your mind.  All right?

8           MR. LEOPOLD:  She just told you.  She just

9           answered --

10          MR. TEIN:  Be quiet.

11   BY MR. TEIN:

12          Q.    What I want to know is what you know from

13   your personal knowledge.  My question to you is:  What

14   knowledge do you have about family members of yours

15   speaking to reporters?

16          MR. LEOPOLD:  Objection.  Asked and

17          answered.

18          And if you can't talk professionally, we're

19          going to leave.

20          MR. TEIN:  Do what you want to do.

21          MR. LEOPOLD:  Are you going to continue to

22          talk this way?

23          MR. TEIN:  I'm not going to answer any

24          question that you ask me, Mr. Leopold.

25          MR. LEOPOLD:  Okay.

Censor & Associates
Reporting and Transcription, Inc.

Page 86

1        MR. TEIN:  But you are misrepresenting the

2        record and you are grandstanding for your client

3        and it's wrong.  So be quiet.  And you know how to

4        make an objection.  Make it.  Otherwise stop

5        talking.

6    BY MR. TEIN:

7        Q.    ███████ ─

8        MR. LEOPOLD:  Excuse me.

9        MR TEIN:  If you want to leave the

10       deposition, leave.  But you'll be back here.

11       MR. LEOPOLD:  Excuse me.  If I could just

12       make the record, instead of interrupting me,

13       please.  That's what we do professionally.

14       There's a recorder here.  I'm certainly not being

15       obstructionist.  I'm going to make the record.

16       But we're going to act with some semblance of

17       professionalism, hopefully, by all parties in the

18       room.  That goes to me, that goes to your

19       co-counsel sitting behind you and next to you, the

20       court reporter and everyone else in the room.

21       Everyone is entitled to that.

22       You've asked a question.  She answered the

23       question fully and she's not going to be harassed

24       because you don't like the answer.  If you want to

25       follow up --

Censor & Associates
Reporting and Transcription, Inc.

Page 87

1          MR. TEIN:  Stop engaging me.  Make your
2      speech and then we'll ask the questions.
3          MR. LEOPOLD:  Well, you won't let me finish
4      making the objection, so it's difficult to do
5      that.  But if you want to follow with an
6      appropriate question, feel free to do that.  But
7      we're not going to harass the witness.
8          MR. TEIN:  I disagree with everything
9      you've said.  Let's ask the questions.  Okay?
10         MR. LEOPOLD:  Ask an appropriate question.
11         MR. TEIN:  Are you going to stop talking?
12         MR. LEOPOLD:  I'm going to make -- protect
13     my client and make appropriate objections.  But
14     there's not a question pending right now.
15  BY MR. TEIN:
16         Q.    ████ has ████ spoken to any reporters?
17         A.    No.
18         MR. LEOPOLD:  Objection.  Asked and
19     answered.
20  BY MR. TEIN:
21         Q.    Has ████ been given money by any
22     reporters?
23         A.    No.
24         Q.    Has your mom spoken to any reporters?
25         MR. LEOPOLD:  Objection.  Asked and

Censor & Associates
Reporting and Transcription, Inc

Page 88

1          answered.

2                    THE WITNESS:  No.

3     BY MR. TEIN:

4          Q.     Has your mom's husband ██████ spoken to any

5     reporters?

6          A.     No.

7          Q.     Has your mom's husband ██████ received any

8     money from reporters?

9          A.     No.

10         Q.     Are you sure you don't know ██████████?

11                    MR. LEOPOLD:  Objection.  Asked and

12         answered.

13                    THE WITNESS:  I'm positive.

14     BY MR. TEIN:

15         Q.     I'll try again to refresh your memory.

16         A.     Okay.

17         Q.     Does it refresh your memory that she had

18     been arrested for drugs and was cooperating with

19     Detective Recarey against Epstein to get herself a better

20     deal?

21         A.     No.  I don't know who she is.

22         Q.     Have you spoken to anyone else who's been

23     at Epstein's house?

24         A.     No.

25         Q.     Without telling me what was said -- I don't

Censor & Associates
Reporting and Transcription, Inc.

Page 89

```
 1       want to know about any conversations with any lawyers,

 2       okay --

 3               A.     Uh-huh.

 4               Q.     -- did you or your parents speak to any

 5       other law firms besides Mr. Herman and Mr. Leopold's law

 6       firms?

 7               A.     No.

 8               Q.     Now without telling me about anything that

 9       was said, what -- did one just come to mind?

10               A.     No.  I was thinking about something else.

11               Q.     What were you thinking about?

12               A.     Does family court matter?

13               Q.     Okay.  Without telling me what was said,

14       who prepared you for today's deposition?

15               A.     What do you mean prepared?

16               Q.     Did you talk about this deposition, about

17       what would happen, with anybody?

18               A.     Yes.

19               Q.     Don't tell me what was said.

20               A.     Okay.

21               Q.     I'm not asking that.  I don't want to know

22       that.

23               A.     Okay.

24               Q.     Who prepared you for today's deposition?

25               A.     Mr. Leopold.
```

**ᘓnsor & Associates**
Reporting and Transcription, Inc.

Page 90

1        Q.    Anybody else?

2        A.    No.

3        Q.    When did you meet with Mr. Leopold to

4  prepare for today's deposition?

5        A.    This morning.

6        Q.    And how long did that meeting last?

7        A.    Until it started.

8        Q.    Now you told me that you previously had

9  read the police reports in this case?

10       A.    Yes.

11       Q.    Have you read your statement that you gave

12  to the police?

13       A.    Yes, sir.

14       Q.    And in what form was that statement?

15       A.    What do you mean?

16       Q.    Was it in the form of a police report or a

17  transcript?

18       A.    What's the difference?

19       Q.    A transcript has questions and answers on

20  it.  A police report is just typed out narrative.

21       A.    Oh, it's a police report.

22       Q.    And when did you read the police report?

23       A.    A few days ago.  I overread it a few days

24  ago.

25       Q.    Had you read it before that?

Censor & Associates
Reporting and Transcription, Inc.

Page 91

1      A.      No.

2      Q.      Now you told me -- again, I don't want to

3   know what was said.

4      A.      Uh-huh.

5      Q.      You told me that you met with Mr. Leopold

6   this morning to prepare for your deposition, right?

7      A.      Yes.

8      Q.      When did you set up that meeting with

9   Mr. Leopold to take place this morning?

10     A.      Gee, like, like five days ago, four days

11   ago.

12     Q.      So you're aware that Mr. Leopold told us

13   that he could not start the deposition this morning

14   because he had a court appearance, correct?

15         MR. LEOPOLD:  Don't answer that question.

16         Calls for attorney/client communications.

17   BY MR. TEIN:

18     Q.      Have you seen the letter that Mr. Leopold

19   wrote to us stating that he -- an e-mail that Mr. Leopold

20   wrote to Mr. Goldberger stating that he could not be here

21   this morning because he had a court appearance?  Did you

22   see that e-mail?

23         MR. LEOPOLD:  You can answer that question.

24         THE WITNESS:  No.

25

Censor & Associates
Reporting and Transcription, Inc.

Page 92

1    BY MR. TEIN:

2          Q.    Have you listened to your tape-recorded

3    statement to the police?

4          A.    Yes.

5          Q.    Where did you listen to that?

6          A.    In, I think, this building.  I don't know.

7    It was here.

8          Q.    When did you listen to that statement?

9          A.    This morning.

10         Q.    And who was present when you listened to

11   that statement?

12         A.    Mr. Leopold -- and I forget your name.

13               MR. GOLDBERGER:  Ms. Belohlavek.

14               THE WITNESS:  Ms. Belohlavek.

15   BY MR. TEIN:

16         Q.    And you hadn't listened to your statement

17   before that, correct?

18         A.    No, sir.

19         Q.    Have you met with lawyers representing

20   anyone else suing Epstein?

21         A.    No, sir.

22         Q.    How many times have you spoken to officers

23   with the Palm Beach Police Department?

24         A.    More than I like can count.  It's been

25   ongoing for four years, so quite a few times.

**Censor & Associates**
Reporting and Transcription, Inc.

Page 93

1   Q.    When was the last time you spoke with

2   officers of the Palm Beach Police Department?

3   A.    A while ago.  I'd say a year ago.

4   Q.    A year ago?

5   A.    Yeah.  Maybe a year and a half.

6   Q.    Do you remember Detective Recarey?

7   A.    No.

8   Q.    Do you remember Michelle Pagan, Detective

9   Pagan?

10   A.    Yes.

11   Q.    How many times have you spoken to Detective

12   Pagan?

13   A.    She was the only one I spoke to about this

14   until for some reason she wasn't on the case anymore.

15   Q.    When was that?

16   A.    The first meeting I ever had was with her

17   and then I think like I met with her like 10 times or 12

18   times or something like that, and then I didn't get --

19   another investigator questioned me after that.

20   Q.    And who was that?

21   A.    I don't remember.

22   Q.    And what type of questions did they ask

23   you?

24   A.    The same.

25   Q.    The same questions all over again?

Censor & Associates
Reporting and Transcription, Inc.

Page 95

1          A.    I'd have to say like a year and a half ago,

2    a year ago.  It was a long time ago.

3               (Discussion held off the record.)

4               MR. TEIN:  Tell me the last answer, please.

5               (Thereupon, a portion of the record was read

6    by the reporter.)

7    BY MR. TEIN:

8          Q.    And who was present when the FBI spoke to

9    you at your father's house?

10         A.    My stepmother was there, but she wasn't

11   around.  She made herself like do other things.

12         Q.    And how many FBI agents were there?

13         A.    I think four.

14         Q.    And you don't remember any of their names?

15         A.    No, sir.

16         Q.    And were there any lawyers there?

17         A.    Not that I know of.

18         Q.    And none of them gave you their cell phone

19   numbers?

20         A.    No.

21         Q.    And the last time you spoke to the FBI was

22   a year and a half ago?

23         A.    It was a while ago.

24               MR. LEOPOLD:  Objection.  Asked and

25         answered.

Censor & Associates
Reporting and Transcription, Inc.

Page 96

1    BY MR. TEIN:

2         Q.   And the last time you spoke to the federal

3    prosecutor's office was when?

4         A.   I don't know.

5         Q.   Did any of the FBI agents tell you that

6    Marie Villafona had spoken with Mr. Leopold?

7         A.   No.

8         Q.   Did any of the FBI agents tell you that

9    Marie Villafona had spoken with Mr. Herman?

10        A.   No.

11        Q.   Did any FBI agents tell you that Jeff

12   Sloman spoke with Mr. Herman.

13        A.   No.

14        Q.   Did any FBI agents tell you that Jeff

15   Sloman spoke with Mr. Leopold?

16        A.   No.

17        Q.   Do you know whether any of the federal

18   prosecutors allowed Mr. Herman to review a draft

19   indictment?

20        A.   I wouldn't know.

21        Q.   Do you know if any of the federal

22   prosecutors discussed a draft indictment with Mr. Herman?

23        A.   I wouldn't know.

24        Q.   Have you ever e-mailed with any FBI agent

25   or any federal prosecutor?

Censor & Associates
Reporting and Transcription, Inc.

Page 97

1          A.     No.

2          Q.     Have you ever text messaged with any FBI

3     agent or any federal prosecutor?

4          A.     No.

5          Q.     Has the FBI told you about other testimony?

6          A.     No.

7          Q.     Has the FBI told you about what other girls

8     have said?

9          A.     No.

10         Q.     Have federal prosecutors told you what

11    other girls have said?

12         A.     No.

13         Q.     Do you have any way of getting in touch

14    with the FBI if you wanted to get in touch with them?

15         A.     No.

16         Q.     How about your parents?  Do they know how

17    to get in touch with the FBI?

18         A.     I don't know.

19         Q.     And by your parents, I'm referring to both

20    sets, okay?

21         A.     Oh.  Well, I'm referring to only my dad,

22    because my mom really doesn't care to know any of this

23    stuff.

24         Q.     So the answer would be the same for your

25    mom and ███████

Censor & Associates
Reporting and Transcription, Inc.

Page 98

```
 1          A.      Yeah.

 2          Q.      Have you spoken to a lawyer named Burt

 3    Ocariz about this case?

 4          A.      No.

 5          Q.      Do you know who Burt Ocariz is?

 6                  Let's see if I can refresh your memory.

 7    Does it refresh your memory that he's a good friend of

 8    Marie Villafona's boyfriend?

 9          A.      I don't know who Marie Villafona is.

10          Q.      Marie Villafona is the lead federal

11    prosecutor that's on the federal part of this case.

12    Okay?

13          A.      No.

14          Q.      So does it refresh your memory that Ocariz

15    is the good friend of Marie Villafona's boyfriend?

16          A.      Not at all.

17          Q.      Does it refresh your memory that Villafona

18    tried to get Epstein to pay for Ocariz to represent you

19    in the federal case?

20          A.      No.

21          Q.      Do you know if Detective Recarey has spoken

22    with your father?

23          A.      No.

24          Q.      Do you know if Detective Recarey has spoken

25    to your stepmother?
```

Ⓒ nsor & Associates
Reporting and Transcription, Inc.

Page 100

1          First off, this is not a warehouse.  This

2      is in ███████████ garage.

3          Second of all, I'm not being gang-raped.

4      Everyone has their clothing on.

5          Thirdly, if you'd look at all the other

6      pictures in that album, I'm drinking -- what's

7      when you're sick you drink it?

8  BY MR. TEIN:

9      Q.    You can't ask questions of your counsel.

10     A.    All right.  I'm drinking like Sprite.  I'm

11 not drinking any kind of alcohol, if you would look at my

12 other pictures in that album.

13          You guys picked the possibly worst pictures

14 out of there to present.  And it was just a goofy

15 picture.  All of these kids like to be goofy.  And that's

16 what we were doing.

17     Q.    Who's the man on the left of the picture

18 holding his -- holding a beer bottle as if it were a

19 penis towards your mouth?

20     A.    ████████████

21     Q.    Who's the man behind you, right up towards

22 your backside, with you bent over?

23     A.    That one?

24     Q.    The right side, kissing with his mouth.

25     A.    That's ██████████

Censor & Associates
Reporting and Transcription, Inc.

Page 101

1          Q.     He's the one grabbing towards the groin

2     area of ████████████

3          A.     Yes.

4          Q.     And there's three other men in the photo.

5     What are their names?  The one on the left with the hat?

6          A.     That's ████████████ (phonetic).

7          Q.     Smiling?

8          A.     Yes.

9          Q.     Who's the one kissing --

10                MR. LEOPOLD:  Don't interrupt.  Let her

11         finish the record.  She's testifying.

12                MR. TEIN:  I know you don't like this

13         picture, my friend.

14                MR. LEOPOLD:  The picture is fine.

15    BY MR. TEIN:

16         Q.     Who's the one with the hat?

17                MR. LEOPOLD:  No.  Hold on.  Stop, ██████

18         You have to let the witness finish her

19         answer.  She was in the process of explaining and

20         you cut her off.

21                Please finish what you were saying and then

22         Counsel can ask you whatever he wishes after that.

23                THE WITNESS:  Okay.  This guy --

24                MR. LEOPOLD:  Just make it so the record is

25         clear who you're referring to.

**Censor & Associates**
Reporting and Transcription, Inc.

1          THE WITNESS:  -- on the far left is ███████

2                  █████████

3    BY MR. TEIN:

4          Q.    He's the one whose head is near the groin

5    of ████████████    right?

6          A.    Yes.

7          Q.    And in the middle there's a man smiling.

8    Who's that?

9          A.    That's ████████████

10         Q.    And who's the one in the red hat, kissing?

11         A.    That's ███████████  (phonetic).

12         Q.    Let me stop you for a second.  Are you

13   done?

14         A.    Yes, I'm done.

15         Q.    Who is ████████?

16         A.    My sister's friend.  Well, she's a mutual

17   friend, but more my sister's.

18         Q.    What is her last name?

19         A.    ████████████

20         Q.    Spell that.

21         A.    I don't know how to --

22         Q.    Have you spoken to her about this case?

23         A.    No.

24         Q.    Who's ██████?

25         A.    My sister's friend.  I don't really speak

Censor & Associates
Reporting and Transcription, Inc.

Page 103

1       to him at all.

2                   Q.    What's his last name?

3                   A.    ████████

4                   Q.    ████████████

5                   A.    ████████

6                   Q.    And have you spoken to ████ about this

7       case?

8                   A.    No, sir.

9                   Q.    Have you spoken to ██████ about this case?

10                  A.    Not in detail, but yes.

11                        MS. BELOHLAVEK:  Are we referring to

12      ████████████?

13                        THE WITNESS:  Yes.

14                        MR. TEIN:  Yes.

15                        MS. BELOHLAVEK:  Okay.

16      BY MR. TEIN:

17                  Q.    Have you spoken to ██████ about this case?

18                  A.    ██████?

19                  Q.    Do you have a friend named ██████

20                  A.    I do not have a friend named ██████

21                  Q.    From freshman year?

22                  A.    No.

23                  Q.    How about ██████

24                  A.    No.

25                  Q.    Have you spoken to ████ about this case?

**Censor & Associates**
Reporting and Transcription, Inc.

1       A.     No.

2       Q.     What's her last name?

3       A.     ▓▓▓▓▓▓ I don't know how to spell it.

4       Q.     Is she the person whose house you went to

5 on New Year's this year?

6       A.     No. I wasn't at her house on New Year's.

7       Q.     Where were you when you took the picture of

8 "Can you say blazed," that's on your website?

9       A.     I wouldn't know or -- wait. We were at a

10 birthday party for some girl's 16th birthday.

11       Q.     Were you drinking at that party?

12       A.     No. There was no alcohol or anything

13 there.

14       Q.     What does "blaze" mean to you?

15       A.     It's like -- it just means like messed up.

16 But we weren't, if you look at the picture.

17       Q.     Messed up like drunk, right?

18       A.     Sure.

19       Q.     Who's ▓▓▓▓▓▓?

20       A.     A girl I know, like from like two years

21 ago.

22       Q.     She's the one you were supposed to be

23 staying with when you went drinking with ▓▓▓▓▓▓?

24       A.     No.

25       Q.     What's ▓▓▓▓▓▓ last name?

Censor & Associates
Reporting and Transcription, Inc.

Page 105

1    A.    ████████████

2    Q.    Where does she live?

3    A.    I don't know.  In Royal Palm.

4    Q.    ████████████

5    A.    Uh-huh.  I'm guessing.

6    Q.    Do you know her phone number?

7    A.    No, I do not.

8    Q.    Let's look at 25-010.

9    A.    See, I'm drinking --

10   Q.    I'm not asking you about what you're

11   drinking.

12         Who are the men in this photo who are

13   pretending to gang up on you and stab you with knives?

14   Who are they?

15   A.    ████████    and ████████████

16   Q.    Are these firemen?

17   A.    Are those?  ████████ -- he said the

18   two stabbing with knives.  That's why I said that.  I

19   don't know.  That's ████████████ and ████████████

20   Q.    Are these firemen?

21   A.    No.  They're all on -- except ████████████

22   they're all on full rights for football.

23   Q.    Go to 025-015.

24         MR. LEOPOLD:  025 dash?

25         MR. TEIN:  015.

Censor & Associates
Reporting and Transcription, Inc.

1          THE WITNESS:  Gosh, that's so long ago.

2    BY MR. TEIN:

3          Q.    Who took the photo of you licking the

4    penis?

5          A.    My stepmother.

6          Q.    Whose idea -- that was your stepmother's

7    idea?

8          A.    It was in Buca di Beppo, where she works

9    currently, and that was before she worked there.  And we

10   just thought it would be funny.

11         MR. TEIN:  19-007.  Can you enlarge that?

12   BY MR. TEIN:

13         Q.    Who took this photo of you simulating you

14   having sex with a man?

15         A.    We're not simulating having sex, and

16   it's -- oh, and the person who took it was, I'm pretty

17   sure, ██████ but I know him as ██████  I don't know his

18   last name.

19         Q.    Go to 19-006, please.

20               Who took this photo of you simulating sex

21   with a man?

22         A.    The same person.  And we're not simulating

23   having sex, Mr. --

24         Q.    Tein.

25               Did you post that on the Internet?

**Censor & Associates**
Reporting and Transcription, Inc.

Page 107

1      A.    Actually, this is an old MySpace I never

2   finished and I never like did anything.  I just kind of

3   made it and left it.

4      Q.    So the answer is yes, you posted this on

5   MySpace?

6      A.    Yup.

7      Q.    Go to 25-016.  Who took this photo of you

8   simulating sex with a woman?

9          MR. LEOPOLD:  Object to the form of the

10         question.  Argumentative.

11         THE WITNESS:  First off, she's piercing my

12         belly button or repiercing it, and I'm pretty sure

13         it was just like we put up a camera somewhere and

14         put a timer on it.  We didn't have anybody take

15         it.

16  BY MR. TEIN:

17     Q.    You posted that on your MySpace page?

18     A.    Yeah.

19     Q.    Go to 25-013.  Is that a photo of you?

20     A.    Yep.

21     Q.    Who's in the photo with you?

22     A.    ██████████

23     Q.    ████████████████

24     A.    Yep.

25     Q.    Is this you coming out of the shower?

**Censor & Associates**
Reporting and Transcription, Inc.

Page 108

```
 1          A.    Yes.

 2          Q.    Are you clothed in this picture?

 3          A.    Yeah.  I have a halter dress on.

 4          Q.    Where is that picture taken?

 5          A.    In _____ house.

 6          Q.    Did you post that on the Internet?

 7          A.    Yes.

 8          Q.    All right.

 9                MR. TEIN:  You can take that down.

10   BY MR. TEIN:

11          Q.    Now your boyfriend is _____

12   correct?

13          A.    Yeah.

14          Q.    You lie about your age in order to conceal

15   something about your relationship with _____

16   isn't that correct?

17          A.    No.

18          Q.    _____ 22 years old, isn't he?

19          A.    Yes.

20          Q.    And ____ is a firefighter with the Palm

21   Beach Fire Department, right?

22          A.    Yup.

23          Q.    Does the Palm Beach Fire Department know

24   that your boyfriend is dating an underage girl?

25          A.    Actually, mister, it's legal.
```

**Censor & Associates**
Reporting and Transcription, Inc.

```
 1          Q.    Well --

 2                MR. LEOPOLD:  Just answer the question,

 3    ████████

 4                THE WITNESS:  Yes.

 5    BY MR. TEIN:

 6          Q.    Did they know two weeks ago that you were

 7    dating an underage girl (sic)?

 8          A.    Yes.  I met everybody in there.

 9          Q.    Did they know your age?

10          A.    Yes.

11          Q.    Did you lie about your age so that the fire

12    department wouldn't think that ████ is committing a

13    crime by having a sexual relationship with an underage

14    girl?

15                MS. BELOHLAVEK:  Objection.  Assumes facts

16          not in evidence.

17    BY MR. TEIN:

18          Q.    You can answer the question.

19          A.    No.

20          Q.    Does the Palm Beach Police Department know

21    that ████ is having a sexual relationship with an

22    underage girl?

23                MR. LEOPOLD:  Don't guess.  Answer if you

24          know.

25                THE WITNESS:  Can you repeat the question?
```

Censor & Associates
Reporting and Transcription, Inc.

Page 110

```
 1    BY MR. TEIN:

 2           Q.    Does the Palm Beach Police Department know

 3    that ████████ a member of the Palm Beach Fire Department,

 4    is having a sexual relationship with an underage girl?

 5           A.    I'm guessing no.

 6           Q.    You lie about your twin sister ████████ don't

 7    you?

 8                 MR. LEOPOLD:  Objection.  Argumentative.

 9    BY MR. TEIN:

10           Q.    Don't you?

11           A.    No.  I have never lied for or to ████████

12           Q.    You lie about the fact that she has a drug

13    habit, right?

14           A.    No.  I would never accuse my sister of

15    having a drug habit.

16           Q.    Do you try to conceal the fact that she has

17    a drug habit?

18                 MR. LEOPOLD:  Objection.  Argumentative.

19    BY MR. TEIN:

20           Q.    You can answer the question.

21           A.    No.  My sister does not have a drug habit.

22           Q.    You lied when you went to the crack house

23    in Georgia, didn't you?

24                 MR. LEOPOLD:  Objection.  Argumentative.

25                 Lack of foundation, lack of predicate.
```

# Censor & Associates
### Reporting and Transcription, Inc.

Page 111

1                    THE WITNESS:  Never -- what did you say?

2      BY MR. TEIN:

3             Q.    You lied when you went to the crack house

4      in Georgia, didn't you?

5                    MR. LEOPOLD:  Objection.  Argumentative.

6             Lack of foundation, lack of predicate.

7      BY MR. TEIN:

8             Q.    You can answer the question.

9             A.    I have never been to a crack house.

10            Q.    Who don't you lie to?

11                   MR. LEOPOLD:  Objection.  Argumentative.

12                   Don't answer the question.

13                   MR. TEIN:  Certify it.

14      .................CERTIFIED QUESTION.................

15      BY MR. TEIN:

16            Q.    You don't lie to ███████ do you?

17                   MR. LEOPOLD:  Objection.  Asked and

18            answered.

19                   Don't answer the question.

20      BY MR. TEIN:

21            Q.    No.  You can answer that question.

22                   MR. LEOPOLD:  No.  I just told her not to.

23            You've asked that question about five --

24                   MR. TEIN:  No, I haven't.

25                   MR. LEOPOLD:  Don't answer the question.

Censor & Associates
Reporting and Transcription, Inc.

Page 112

1          MR. TEIN:  I'll certify it.

2     ................CERTIFIED QUESTION.................

3          MR. LEOPOLD:  For the record, you have to

4          stop interrupting me because she can't take down

5          both of us talking at the same time.

6    BY MR. TEIN:

7          Q.    You tell ███ the truth, don't you?

8          A.    Excuse me?

9          Q.    You tell ███ the truth, don't you?

10         A.    When it's -- yes, I tell ███ the truth.

11         Q.    Who's ███ drug dealer?

12         A.    My sister does not have a drug dealer.  She

13    lives in Georgia with my mother.

14         Q.    Okay.  Who is the drug dealer who dropped

15    you and ███ off at 5:45 a.m., in 2006, after being out

16    all night, the two of you, using drugs at Palm Beach

17    Country Estates where your father called the police?

18         A.    ███████

19         Q.    He's the drug dealer?

20         A.    He is a drug dealer.

21         Q.    Do you remember ███ was arrested by the

22    Palm Beach Police Department and taken to the Juvenile

23    Assessment Center that morning?

24         A.    I do remember that.

25         Q.    Now before you massaged Epstein, you were

**Censor & Associates**
Reporting and Transcription, Inc.

Page 113

1    involuntarily admitted into a juvenile educational

2    facility; isn't that right?

3              A.    Did you say involuntarily?

4              Q.    Yes.

5              A.    No. I was willing to go.  I -- duly said

6    sure.

7              Q.    And you went there because you were lying

8    so much, no one could control you; isn't that correct?

9              A.    That's very incorrect.

10             Q.    Now you lie to your parents all the time,

11   don't you?

12             A.    Incorrect.

13                   MR. LEOPOLD:  Objection.  Argumentative.

14   BY MR. TEIN:

15             Q.    Sorry?

16             A.    Incorrect.

17             Q.    The day you went to Epstein's house you

18   lied to your father about where you were going; isn't

19   that correct?

20             A.    Correct.

21             Q.    You admitted to the police that you told

22   your father that you were going shopping, didn't you?

23             A.    Yes.

24             Q.    And that was a lie, wasn't it?

25             A.    Yes.

Censor & Associates
Reporting and Transcription, Inc.

Page 114

1      Q.    And isn't it true that your father has

2    accused you of lying?

3      A.    All the time.

4      Q.    Didn't your father throw you out of the

5    house Thanksgiving of this past year because you were

6    lying so much to him?

7      A.    Yes, he did kick me out.  No, that's not

8    the reasons why.

9      Q.    Didn't your father throw your sister ▬▬▬▬

10   out of the house, too?

11     A.    Yes.

12     Q.    And he threw her out of the house the week

13   after Thanksgivings, right?

14     A.    I don't know the date, but sure.

15     Q.    Sounds about right?

16     A.    Sure.

17     Q.    And the reason he threw her out of the

18   house was because she was lying, too?

19          MR. LEOPOLD:  Objection.  Lack of

20          foundation.  Calls for speculation.

21   BY MR. TEIN:

22     Q.    When your counsel coaches you, you say it's

23   correct, right?

24     A.    I've never been coached.

25          MR. LEOPOLD:  Objection.

Censor & Associates
Reporting and Transcription, Inc.

Page 115

1   BY MR. TEIN:

2        Q.   Okay.  When your counsel that it was there

3   was lack of foundation, you agree with your counsel,

4   right?

5        A.   I was like saying, "Yeah, let's move on,"

6   because there was no point to asking that question.

7        Q.   Your father threw ███████ out of the house

8   because she was lying, correct?

9            MR. LEOPOLD:  Objection.  Lack of

10           foundation.

11           Hold on, ███████  Let me just make the

12           objection.

13           Lack of foundation, predicate, calls for

14           speculation.

15  BY MR. TEIN:

16       Q.   Answer.

17       A.   I'm not my sister.  I don't know.

18       Q.   I want to know what you know only.

19       A.   I don't know.

20       Q.   You don't know.  That's your answer?

21       A.   Yes.

22       Q.   Now your parents filed the police report

23  regarding Mr. Epstein, right?

24       A.   Yes.

25       Q.   Now your parents are also lying, aren't

Censor & Associates
Reporting and Transcription, Inc.

Page 116

1    they?

2            A.    Yes.

3                  MR. LEOPOLD:  Just so the record is clear,

4    the father -- because the mother was up north.

5                  MR. TEIN:  Don't testify, Counsel.

6                  MR. LEOPOLD:  So the record is clear, just

7    the father.  The mother was --

8                  MR. TEIN:  Counsel, don't coach and

9    testify, please.  That's absolutely improper.

10                  MR. LEOPOLD:  You just asked the wrong

11   question.

12                  MR. TEIN:  You can't coach her that way and

13   you well know it.

14                  MR. LEOPOLD:  For the record, it's the

15   father.  He's remarried, I think on his third

16   marriage.

17                  MR. TEIN:  You cannot -- it's absolutely,

18   totally against the rules and you know it.

19                  MR. LEOPOLD:  The natural mother lives in

20   Georgia.

21                  MR. TEIN:  You need to behave yourself,

22   lawyer.

23                  MR. LEOPOLD:  The natural mother lives in

24   Georgia.  The father is here locally.

25                  MR. TEIN:  Stop coaching.  Stop talking.

Censor & Associates
Reporting and Transcription, Inc.

Page 117

1          You object.  You know the rules.  You just

2          lectured me about the rules, Counsel.  So why

3          don't you play by the rules?  Or only when they

4          fit you?  Why don't you grandstand a little more

5          now.  Give us a five-minute speech, Mr.  Leopold.

6               MR. LEOPOLD:  Are you finished, for the

7          record?

8               MR. TEIN:  I'm not talking to you.  Do what

9          you want.

10              MR. LEOPOLD:  Don't say anything yet.

11   BY MR. TEIN:

12        Q.   ▓▓▓▓▓▓ your parents --

13              MR. LEOPOLD:  Hold it.  Don't say anything

14         yet.  Let me --

15   BY MR. TEIN:

16        Q.   Your parents, who filed the police report

17   are also liars.

18              MR. LEOPOLD:  Don't answer the question.

19         We're not going to answer until I make the record.

20         I want to put on the record, now that Counsel

21         appears to be finished with his comments for the

22         record, that the previous question was

23         inappropriate, was intentionally misleading.

24              Now you can ask the question.

25   BY MR. TEIN:

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd., Suite 500 - West Palm Beach, FL 33401

Censor & Associates
Reporting and Transcription, Inc.

Page 118

1          Q.    Your parents, who filed the police report

2     in this case, are also proven liars, aren't they?

3                    MR. LEOPOLD:  Same objection.

4     BY MR. TEIN:

5          Q.    Aren't your parents liars?

6                    MR. LEOPOLD:  Calls for speculation.  Lack

7          of predicate.

8                    MR. TEIN:  Stop coaching.  You know what

9          that is, Leopold.

10                   MR. LEOPOLD:  Calls for speculation.  Lack

11         of foundation.

12                   THE WITNESS:  When you say parents, my mom

13         is not, but sure, yeah, my dad has been to jail

14         for lying.

15    BY MR. TEIN:

16         Q.    Your dad went to federal prison for two

17    years for lying, right?

18         A.    Correct.

19         Q.    Did he tell you it was for a financial

20    fraud?

21         A.    Yes.

22         Q.    For stealing money from some financial

23    institution?

24         A.    Correct.

25         Q.    And do you think your father is trying to

**Censor & Associates**
Reporting and Transcription, Inc.

Page 119

1    steal your lawsuit money away from you?

2              Don't look to your lawyer for the answer.

3              MR. LEOPOLD:  You can answer if you know

4         the answer to it.  I have no idea.

5              THE WITNESS:  Yeah.

6    BY MR. TEIN:

7         Q.    And your father filed a lawsuit, the first

8    lawsuit for fifty million dollars against Mr. Epstein

9    without consulting you, correct?

10        A.    Correct.

11        Q.    And your father had a lawyer file the first

12   lawsuit on your behalf for fifty million dollars against

13   Mr. Epstein without your knowledge, correct?

14        A.    Correct.

15        Q.    And you don't trust your father, do you?

16        A.    Correct.

17        Q.    And you believe he's trying to manipulate

18   you for his own gain, don't you?

19        A.    Sort of.

20        Q.    Well, you know that your mother filed a

21   statement, an affidavit, saying that you don't trust your

22   father and that you believe he's trying to manipulate you

23   for his own gain; isn't that correct?

24        A.    Correct.

25        Q.    You agree with that statement, don't you?

Censor & Associates
Reporting and Transcription, Inc.

Page 120

1    A.    Uh-huh.  Yes.

2    Q.    Do you trust your stepmother?

3    A.    My stepmother, no.

4    Q.    You think she's also trying to steal your

5    Epstein lawsuit money away from you, don't you?

6    A.    I would like to clarify something.  You

7    keep saying my Epstein lawsuit money.  I don't have any

8    money, and it's just a lawsuit at the moment.  So I just

9    don't trust her.

10    Q.    Okay.  You think that your stepmother is

11    trying to take advantage of this lawsuit to try to get

12    money from Mr. Epstein that belongs to you, right?

13    A.    Yes.

14    Q.    Did your stepmother tell you why she was

15    arrested?

16    A.    No.

17    Q.    Did your stepmother tell you that she's

18    ever been arrested?

19    A.    No.

20    Q.    Did she tell you she was arrested for

21    fraud?

22    A.    Never.

23    Q.    Did she tell you that she was fired from

24    Hawthorne Aviation?

25    A.    No.

Censor & Associates
Reporting and Transcription, Inc.

Page 121

1    Q.    Did she tell you that she was fired from

2    Hawthorne Aviation for stealing?

3    A.    No.

4          MR. TEIN:  Let's take a break.

5          (Thereupon, a recess was taken.)

6    BY MR. TEIN:

7    Q.    ████████ before you met Jeffrey Epstein, had

8    you ever had sexual intercourse?

9    A.    Yes, yeah.

10   Q.    How many times?

11   A.    Just a few.  Twice.

12   Q.    With how many different men?

13   A.    Two.

14   Q.    How old were they?

15   A.    ████████ being one year older than me,

16   and then the other person was two years older than me.

17   Q.    What was his name?

18   A.    ████████

19   Q.    How old were you when you first had sexual

20   intercourse?

21   A.    14.

22   Q.    How many -- before you met Epstein, how

23   many different men had you had any type of sexual

24   activity with?

25   A.    Just those two.

Censor & Associates
Reporting and Transcription, Inc.

Page 122

1          Q.    Are you saying you never kissed a man other

2     than those two?

3               MR. LEOPOLD:  Objection to the form of the

4          question.

5               THE WITNESS:  Yes, I had kissed people

6          before.

7     BY MR. TEIN:

8          Q.    Before you met Epstein, had you ever had

9     oral sex?

10         A.    No.

11         Q.    Ever in your life, have you exchanged sex

12    for something of value?

13         A.    No.

14              MR. TEIN:  We're done.

15              THE WITNESS:  Oh, okay.

16              MR. LEOPOLD:  We'll read.

17              MS. BELOHLAVEK:  I don't have any

18         questions.  Thank you.

19              MR. LEOPOLD:  Before we go off the record,

20         it's my understanding -- Mr. Goldberger can

21         correct the record -- but we have stipulated that

22         color copies of the documents that were identified

23         for identification certainly will be attached to

24         the deposition and counsel will be taking the

25         photographs across street so that they can be

nsor & Associates
Reporting and Transcription, Inc.

Page 123

1    laser color copied so that we have a copy, and I'm

2    assuming he'll get a copy to the court reporter,

3    too, to attach, actually a certified copy to the

4    deposition.

5          MR. GOLDBERGER:  Done.

6          MR. LEOPOLD:  That's if you agree to that.

7    If not, then I want to pull each one out and put

8    exhibit labels on them, which we should do before

9    we leave.

10          MR. GOLDBERGER:  We're not going to do

11    either.  I'll have copies sent to the court

12    reporter and she can attach them to the

13    deposition.

14          MR. LEOPOLD:  So you're not going to agree

15    to what we talked about during the break then.

16          MR. GOLDBERGER:  I'm not quite sure what

17    your asking me to do.  Let me finish.

18          MR. LEOPOLD:  Okay.  Sure.  That's fine.

19          MR. GOLDBERGER:  Okay.  If you want me to

20    go over to Ms. Belohlavek's office and make copies

21    and then I'll give those to the court reporter,

22    fine.  All I'm saying is that I would avoid that

23    process.  I would send copies to the court

24    reporter.  But if it will make you happier --

25          MR. LEOPOLD:  I'm not?

Censor & Associates
Reporting and Transcription, Inc.

Page 124

1          MR. GOLDBERGER:  Let me finish.

2          MR. LEOPOLD:  I'm not interrupting now.

3          MR. GOLDBERGER:  But if it will make you

4     happier if I go over to Ms. Belohlavek's office

5     and make a copy of those photos that were part of

6     this deposition and then I'll give them to the

7     court reporter, I'll be happy to do it.

8          MR. LEOPOLD:  I trust you implicitly,

9     however you with to do it.  However, the

10    documents, before they leave this room, need to

11    have an exhibit sticky on them with the

12    appropriate --

13         MR. GOLDBERGER:  Want to go get some?  We

14    don't have any.

15         MR. LEOPOLD:  I will do that.  Excuse me.

16    Let me finish the record, please.  You can't do

17    that to the court reporter.  She's going to stroke

18    out.  You can't do that.  You have to let me --

19         MR. TEIN:  Finish your sentence, Ted.  You

20    are the most long-winded lawyer I've ever seen in

21    my life.  Finish your sentence.

22         MR. LEOPOLD:  Jack, tell him not to raise

23    his voice, please.

24         MR. TEIN:  Finish your sentence.  Is there

25    going to be a period at the end of the sentence or

Censor & Associates
Reporting and Transcription, Inc.

Page 125

1     is it just going to be comma after comma after

2     comma?

3          Go ahead, lawyer.

4          MR. LEOPOLD: All right. The exhibits, I

5     can't prevent you from taking them, but I will

6     object and I will be bringing it to the court for

7     sanctions. You cannot take the exhibits out of

8     the room without them being marked. I want them

9     marked, because you cannot identify in the record

10    what was used. And with all due respect to

11    Mr. Goldberger, I do not -- the way this

12    deposition is going, I do not want to rely on

13    Counsel from Miami to mark the appropriate

14    exhibits. I will not do that. I cannot prevent

15    you from taking them. But if you do, I will be

16    bringing the matter to the court with appropriate

17    sanctions, because that is improper. That is

18    improper. When you use something in a deposition,

19    they are to be marked. And you have refused to do

20    that throughout for what ever reason.

21        MR. TEIN: You're wrong. Finish your

22    sentence because you're talking about something

23    you have no idea.

24        Every single one is marked, Ted. Every

25    single one is already marked. But you want to

Censor & Associates
Reporting and Transcription, Inc.

Page 126

1    argue about everything.  Ever single one is

2    already marked.  Isn't that silly, Ted?

3         MR. GOLDBERGER:  Thirty years of doing this

4    and I have never had an argument over this.

5         MR. TEIN:  You've made -- Ted, you are

6    obstructionist, you are a liar.  You have lied and

7    misrepresented things, for the record.  You are

8    grandstanding.

9         MR. LEOPOLD:  You need to back up.

10        MR. TEIN:  No, no.  I'm going to finish.

11        MR. LEOPOLD:  You can finish, but don't

12   hover over me.

13        MR. TEIN:  No one is hovering over you.

14   Stop trying to make a lying record.

15        Let me say something else.

16        Don't you dare threaten me with sanctions,

17   after you lied in a letter to my co-counsel about

18   the fact -- be quiet.  Be quiet and let me finish.

19   You lied in a letter to my co-counsel,

20   Mr. Leopold, in which you said -- it was a

21   complete and utter lie -- that you were

22   unavailable this morning because you had a

23   hearing.  That was a lie.  I have never seen a

24   lawyer deign to do something like that.

25        So you will get the ex -- be quiet.  Let me

**nsor & Associates**
Reporting and Transcription, Inc.

1    finish.  You behave.

2         MR. LEOPOLD:  Don't point your finger at

3    me.

4         MR. TEIN:  Listen.  Be quiet and I won't

5    have a need to point it at you.

6         MR. LEOPOLD:  Don't point your finger at --

7         MR. TEIN:  Mr. Leopold --

8         MR. LEOPOLD:  Don't point your finger at

9    me.

10         MR. TEIN:  Mr. Leopold, let me finish.

11         MR. LEOPOLD:  Don't raise your voice

12    either.

13         MR. TEIN:  Mr. Leopold --

14         MR. LEOPOLD:  Jack, do you want to take

15    care of this?

16         MR. TEIN:  Let me finish my sentence.  The

17    exhibits are marked.  We are walking out of here.

18         You are someone who misrepresents the

19    record.  It is absolutely atrocious what you do.

20    That is not how a lawyer should behave.  This

21    deposition is over.  You will get your exhibits,

22    Mr. Leopold.

23         MR. GOLDBERGER:  I understand what you're

24    saying, Michael, and I understand Ted's position.

25         Just so there's -- we're going to have lots

Consor & Associates
Reporting and Transcription, Inc.

1      of issues in this case.  We're going to have lots

2      of reasons to disagree.

3           I'm going to take it over now and I'm going

4      to make copies and I'm going to give them to

5      Ms. Consor.  If you want to go find some exhibit

6      labels and put some exhibit labels on it, be my

7      guest.  But that's what I'm offering to do.

8           THE WITNESS:  Let me say two things,

9      because I am happy to always disagree, and with

10     you, I have no problem; we could always do it

11     professionally.  I have not problem.

12          I want to say two things so the record is

13     very clear.

14          Since for whatever reason I have not been

15     able to look at exhibits, because they have been

16     refused to have been shown to me --

17          MR. TEIN:  That's a lie.

18          MR. LEOPOLD:  -- Jack, if you represent

19     that the documents have the appropriate exhibit

20     numbers or some identifying markings, 25, 30.000,

21     whatever they may be, then you can take them, make

22     copies, send me a copy, make sure the court

23     reporter gets a copy and then send me a bill for

24     my copies, that's fine.  I didn't know that they

25     are marked that way because I haven't been able to

Censor & Associates
Reporting and Transcription, Inc.

1    look at them.

2        MR. GOLDBERGER:  They are barcoded, and the

3    number that we've made reference to in the

4    deposition coincides with the barcoding.

5        MR. LEOPOLD:  That's fine.  Eight by eleven

6    color laser copies are fine.

7        MS. BELOHLAVEK:  The State Attorneys Office

8    is not going to charge anybody for color copies I

9    print out.

10        MR. LEOPOLD:  That's fine.  He's going to

11    take them back to his office.

12        Secondly -- and I will be more than happy

13    to do it, because it sounds like you all know more

14    about it than I -- but I'm happy to get affidavits

15    from Mr. Pincus, Judge Stern, everybody else about

16    what happened with this hearing today, because I

17    know very little about it.  But my representations

18    are what they are.

19        MR. GOLDBERGER:  They stay --

20        MR. LEOPOLD:  Let me just finish for the

21    record.

22        My representations or comments about what

23    happened, representation about this hearing this

24    morning, I know very little about it.  I --

25        MR. GOLDBERGER:  I'll take your word on

Censor & Associates
Reporting and Transcription, Inc.

1    that.

2         MR. LEOPOLD:  No, no, no.  I just put it on

3    the record.  I will get an affidavit -- I'm

4    assuming it sounds like you need it -- from Mr.

5    Pincus.  I have no clue about what happened and

6    why it was canceled.  All I was told when I was

7    out of town yesterday was that the hearing this

8    morning was cancelled.

9         MR. GOLDBERGER:  I'll take your word for

10   it.

11        MR. LEOPOLD:  If you want an affidavit,

12   I'll get it for you.

13        MR. GOLDBERGER:  It's a personal issue for

14   me because I had to disrupt a vacation and if it

15   was done just because it wasn't convenient for

16   you, then I'm offended by that.  But if you're

17   telling me that it was planned and it didn't

18   happen, I'll take your word for it.

19        MR. LEOPOLD:  I am more than happy to get

20   you an affidavit, because I don't know the reason

21   why it was canceled other than the fact that I'm

22   assuming since my deposition was taken for four

23   hours on Monday for preparation for the hearing

24   today, for whatever reason it was canceled, I am

25   told it is being re-noticed.  Why it was canceled,

Censor & Associates
Reporting and Transcription, Inc.

Page 131

1    I have no idea, but if your co-counsel wishes an

2    affidavit to that effect from Mr. Pincus, I'm more

3    than happy to get it. But I don't know the reason

4    why it was canceled.

5         MR. TEIN: I don't need it. But what I do

6    take issue with is regardless of why it was

7    canceled, you owed us the courtesy of saying, You

8    know what? We can start earlier this morning.

9         MR. LEOPOLD: I owe you nothing.

10        MR. TEIN: I don't care. Don't interrupt

11   me.

12        Because Jack canceled his vacation plans

13   because of you.

14        MR. GOLDBERGER: That's all right, that's

15   all right.

16        MR. TEIN: And you're selfish. And this

17   deposition is over. Good-by Mr. Leopold.

18        MR. GOLDBERGER: You can go off the record.

19              -  -  -

20

21

22

23

24

25

Censor & Associates
Reporting and Transcription, Inc.

Page 132

```
 1                    C E R T I F I C A T E

 2                         -   -   -

 3

 4      The State of Florida,        )

 5      County of Palm Beach.        )

 6

 7              I hereby certify that I have read the

 8      foregoing deposition by me given, and that the statements

 9      contained herein are true and correct to the best of my

10      knowledge and belief, with the exception of any

11      corrections or notations made on the errata sheet, if one

12      was executed.

13

14

15              Dated this _____day of_____, 2008.

16

17

18

19

20

21                       _____

22                       ████████████████████

23

24

25
```

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd., Suite 500 - West Palm Beach, FL 33401

Consor & Associates
Reporting and Transcription, Inc.

Page 133

1    DATE: February 25, 2008
2    TO:
     c/o Lana Belohlavek
3    Office of the State Attorney
     401 N. Dixie Highway
4    West Palm Beach, Florida 33401
5    IN RE:   STATE OF FLORIDA -V- JEFFREY EPSTEIN
     CASE NO.:  2006 CF09454AXX
6
              Please take notice that on Wednesday, the
7    20th of February, 2008, you gave your deposition in the
     above-referred matter.  At that time, you did not waive
8    signature.  It is now necessary that you sign your
     deposition.
9             Please call our office at the below-listed
     number to schedule an appointment between the hours of
10   9:00 a.m. and 4:30 p.m., Monday through Friday.
11            If you do not read and sign the deposition
     within a reasonable time, the original, which has already
12   been forwarded to the ordering attorney, may be filed
     with the Clerk of the Court.  If you wish to waive your
13   signature, sign your name in the blank at the bottom of
     this letter and return it to us.
14                           Very truly yours,
15   _____
     Judith F. Consor, FPR
16   Consor & Associates Reporting and Transcription
     1655 Palm Beach Lakes Boulevard, Suite 500
17   West Palm Beach, Florida 33401
18   I do hereby waive my signature:
19   _____

20
     cc via transcript:   JACK A. GOLDBERGER, ESQ.
21                        LANNA BELOHLAVEK, ESQ.
                          MICHAEL R. TEIN, ESQ.
22                                THEODORE J. LEOPOLD, ESQ.
     file copy
23
24
25

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd., Suite 500 - West Palm Beach, FL 33401

**Censor & Associates**
Reporting and Transcription, Inc.

Page 134

1                       E R R A T A   S H E E T

2       IN RE:  STATE-V-JEFFREY EPSTEIN

        DEPOSITION OF: ███████████████        TAKEN: February 20th,

3       2008

             DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE

4       PAGE #   LINE #   CHANGE            REASON

5       _____

6       _____

7       _____

8       _____

9       _____

10      _____

11      _____

12      _____

13      _____

14      _____

15      _____

16      _____

17      _____

18      _____

19      _____

20      _____

21      Please forward the original signed errata sheet to this

        office so that copies may be distributed to all parties.

22

        Under penalty of perjury, I declare that I have read my

23      deposition and that it is true and correct subject to any

        changes in form or substance entered here.

24

        DATE:_____  SIGNATURE OF DEPONENT:_____

25

Censor & Associates
Reporting and Transcription, Inc.

Page 135

1    THE STATE OF FLORIDA, )

2    COUNTY OF PALM BEACH.  )

3

4

5            I, the undersigned authority, certify that

6    ████████████ personally appeared before me on the 20th

7    of February, 2008 and was duly sworn.

8

9            WITNESS my hand and official seal this 25 day

10   of February, 2008.

11

12

13

14            _Judith F. Consor_____

              Judith F. Consor, FPR

              Notary Public - State of Florida

15

16

17

18

19

20

21

22

23

24

25

Consor & Associates
Reporting and Transcription, Inc.

Page 136

1          C E R T I F I C A T E
2

The State Of Florida, )
3    County Of Palm Beach.  )

4
5          I, Judith F. Consor, Court Reporter and Notary
Public in and for the State of Florida at large, do
6    hereby certify that I was authorized to and did
stenographically report the deposition of ▮▮▮▮▮▮▮▮
7    that a review of the transcript was requested; and that
the foregoing pages, numbered from 1 to 131, inclusive,
8    are a true and correct transcription of my stenographic
notes of said deposition.

9
          I further certify that said deposition was
10   taken at the time and place hereinabove set forth and
that the taking of said deposition was commenced and
11   completed as hereinabove set out.
12        I further certify that I am not an attorney or
counsel of any of the parties, nor am I a relative or
13   employee of any attorney or counsel of party connected
with the action, nor am I financially interested in the
14   action.
15        The foregoing certification of this transcript
does not apply to any reproduction of the same by any
16   means unless under the direct control and/or direction of
the certifying reporter.
17
          DATED this 25 day of February, 2008.
18
19        _Judith F. Consor_

20        Judith F. Consor, Court Reporter
          Florida Professional Reporter
21
22
23
24
25

# STATE COURT PLEADINGS

IN THE CIRCUIT COURT OF THE
15TH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY
FLORIDA

CASE NO. 50 2008 CA 006596 XXXX MB

JANE DOE, by and through
JANE DOE'S MOTHER as parent and natural
guardian,

        Plaintiffs,

vs.

JEFFREY EPSTEIN, HALEY ROBSON,
and SARAH KELLEN,

        Defendants.

_____

## COMPLAINT

Plaintiffs, JANE DOE, by and through JANE DOE'S MOTHER as parent and natural

guardian of JANE DOE, bring this Complaint against Defendants JEFFREY EPSTEIN, HALEY

ROBSON, and SARAH KELLEN, and state as follows:

### Parties, Jurisdiction and Venue

1. Jane Doe is a citizen and resident of the State of Florida.  She is a minor under the age of

18 years.

2. Jane Doe's Mother brings this action as parent and natural guardian of Jane Doe.

3. This Complaint is brought under fictitious names to protect the identity of the Minor

Plaintiff because this Complaint makes sensitive allegations of sexual assault and abuse upon a

minor.

4. Defendant Jeffrey Epstein is a citizen and resident of the State of New York.

5. Defendant Haley Robson is a citizen and resident of Palm Beach County, Florida.

6. Defendant Sarah Kellen is a citizen and resident of the State of New York.

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

7. This is an action for damages in excess of Fifteen Thousand Dollars ($15,000) exclusive of interest and costs.

8. Venue is proper in this Court under section 47.011, Florida Statutes, because the causes of action brought herein accrued in Palm Beach County, Florida and one or more Defendants resides in Palm Beach County, Florida.

### Factual Allegations

9. At all relevant times, Defendant Jeffrey Epstein was an adult male. Epstein is a financier and money manager with a secret clientele limited exclusively to billionaires. He is a man of tremendous wealth, power and influence. He maintains his principal home in New York and also owns residences in New Mexico, St. Thomas and Palm Beach, Florida.   The allegations herein concern Epstein's conduct while at his lavish estate in Palm Beach.

10. Upon information and belief, Epstein has a sexual preference and obsession for minor girls. He engaged in a plan, scheme, and/or enterprise in which he gained access to primarily economically disadvantaged minor girls in his home, sexually assaulted these girls or coerced them to engage in prostitution, and then gave them money. In or about 2005, Jane Doe, then 14 years old, fell into Epstein's trap and became one of his victims.

11. Upon information and belief, Jeffrey Epstein carried out this scheme/enterprise and assaulted girls in Florida, New York and on his private island, known as Little St. James, in St. Thomas.

12. An integral player in Epstein's Florida scheme was Sarah Kellen, an assistant of Epstein's from New York, New York and Haley Robson, a Palm Beach Community College student from Loxahatchee, Florida. They recruited girls ostensibly to give a wealthy man a massage for monetary compensation in his Palm Beach mansion. Under Epstein's plan/enterprise, Ms. Robson was contacted shortly before or soon after Epstein was at his Palm Beach residence. Epstein, Kellen or someone on their behalf directed Ms. Robson to bring one or more underage girls to the residence.

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

163 of 316

Ms. Robson, upon information and belief, generally sought out economically disadvantaged underage girls from Loxahatchee and surrounding areas who would be enticed by the money being offered - generally $200 to $300 per "massage" session – and who were perceived as less likely to complain to authorities or have credibility if allegations of improper conduct were made. This was an important element of Epstein's plan/enterprise.

13. Epstein's plan, scheme, and/or enterprise reflected a particular pattern and method. Upon arrival at Epstein's mansion, Mr. Robson would introduce each victim to Sarah Kellen, Epstein's assistant, who gathered the girl's personal information, including her name and telephone number. Ms. Kellen would then bring the girl up a flight of stairs to a bedroom that contained a massage table in addition to other furnishings. There were photographs of nude women lining the stairway hall and in the bedroom. Ms. Kellen would then leave the girl alone in this room, whereupon Epstein would enter wearing only a towel. He would then remove his towel, lay down naked on the massage table, and direct the girl to remove her clothes. He then would perform one or more lewd, lascivious and sexual acts, including masturbation, touching the girl's vagina with a vibrator, or digitally penetrating the girl's vagina.

14. Consistent with the foregoing plan, scheme, and/or enterprise, Ms. Robson recruited Jane Doe to give Epstein a massage for monetary compensation. Ms. Robson brought Jane Doe to Epstein's mansion in Palm Beach. Jane was introduced to Sarah Kellen, who led her up the flight of stairs to the room with the massage table. Ms. Kellen set up the message table and laid out message oils and told Jane Doe that Epstein would be in shortly and then left the room. Jane Doe was alone in the room when Epstein arrived. Epstein told her to remove her clothes and left the room. When Epstein returned he was wearing only a towel. He removed his towel, and laid down on his stomach on the message table. Epstein again told Jane Doe remove her clothes. In shock, fear and trepidation, Jane Doe complied, removing her clothes except for her panties and bra. Shortly

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

after starting to rub Epstein's back, Epstein told Jane Doe to sit on his back. Jane Doe, out of fear and trepidation, complied. After a period of time Epstein got up from the table and went behind the door. For several minutes Jane Doe heard loud noises and moans and believes that Epstein was masturbating. Thereafter Epstein, naked, returned to the message table and laid face up on the table. Epstein than told Jane Doe to continue with the message and told her to sit on top of him. Out of fear and trepidation she complied. As Jane Doe rubbed Epstein's chest Epstein began to use a vibrator on Jane Doe's vagina. Thereafter Epstein began to digitally stimulate and attempt to penetrate Jane's vagina. At this same time Epstein was masturbating. Upon reaching orgasm Epstein got up from the message table and told Jane Doe to write down her name and phone number and than left the room.

15. Jane Doe was then able to get dressed, leave the room and go back down the stairs and into the kitchen. Epstein, Robson and Kellen were waiting for Jane Doe. Epstein paid Jane Doe $300. Ms. Robson was paid $200 by Epstein for bringing Jane to him. Ms. Robson brought Jane Doe home.

16. As a result of this encounter with Epstein, the 14-year old Jane Doe experienced confusion, shame, humiliation, embarrassment and the assault sent her life into a downward spiral.

## COUNT I
### Sexual Assault against Defendant Epstein

17. Plaintiff Jane Doe by and through her Mother, as parent and natural guardian, repeats and realleges paragraphs 1 through 16 above.

18. Defendant Epstein tortiously assaulted Jane Doe sexually in or about 2005.

19. This sexual assault was in violation of Chapter 800 of the Florida Statutes, which recognizes as a crime the lewd and lascivious acts committed by Epstein upon Jane Doe.

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

20. As a direct and proximate result of Epstein's assault on Jane Doe, she has suffered and will continue to suffer severe and permanent traumatic injuries, including mental, psychological and emotional damages.

WHEREFORE, Plaintiff Jane Doe, by and through her Mother, as parent and natural guardian, demands judgment against Defendant Jeffrey Epstein for compensatory damages, costs, attorney's fees, and such other and further relief as this Court deems just and proper. Further, Plaintiff reserves the right to amend this Complaint to add a claim for punitive damages pursuant to Florida Law.

## COUNT II
### Civil Conspiracy against Defendants Epstein, Robson and Kellen

21. Plaintiff Jane Doe by and through her Mother, as parent and natural guardian, repeats and realleges paragraphs 1 through 16 above.

22. Defendants Epstein, Robson and Kellen conspired to subject Jane Doe to the sexual assault of Defendant Epstein.

23. Each of the Defendants committed an overt act in pursuance of this conspiracy: Defendant Robson used false pretenses to lure Jane Doe to the home of Defendant Epstein so that Epstein could sexually assault Jane Doe; Defendant Kellen delivered Jane Doe to Defendant Epstein's bedroom so that Epstein could sexually assault Jane Doe; and Defendant Epstein actually committed sexual assault against Jane Doe.

24. As a direct and proximate result of Defendants' civil conspiracy, Jane Doe has suffered and will continue to suffer severe and permanent traumatic injuries, including mental, psychological and emotional damages.

166 of 316

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

WHEREFORE, Plaintiff Jane Doe, by and through her Mother, as parent and natural guardian, demands judgment against Defendants Jeffrey Epstein, Haley Robson, and Sarah Kellen for compensatory damages, costs, attorney's fees, and such other and further relief as this Court deems just and proper. Further, Plaintiff reserves the right to amend this Complaint to add a claim for punitive damages pursuant to Florida Law.

**COUNT III**

**Intentional Infliction of Emotional Distress against Defendant Epstein**

25. Plaintiffs Jane Doe by and through her Mother, as parent and natural guardian, repeat and reallege paragraphs   through 16 above.

26. Epstein's conduct was intentional or reckless.

27. Epstein's conduct was outrageous, going beyond all bounds of decency.

28. Epstein's conduct caused severe emotional distress not only to Jane Doe.  Epstein knew or had reason to know that his intentional and outrageous conduct would cause emotional trauma and damage to Jane Doe and her mother.

29. As a direct and proximate result of Epstein's intentional or reckless conduct, Jane Doe will continue to suffer severe mental anguish and pain.

WHEREFORE, Jane Doe, by and through her Mother, and Jane Doe's Mother, individually, demand judgment against Defendant Jeffrey Epstein for compensatory damages, costs, attorney's fees, and such other and further relief as this Court deems just and proper. Further, Plaintiff reserves the right to amend this Complaint to add a claim for punitive damages pursuant to Florida Law.

Page 6 of 9

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

## COUNT IV
### Civil Remedy for Violation of Florida Statute Section 772.103 against Defendants Epstein, Robson and Kellen

30. Plaintiffs Jane Doe by and through her Mother, as parent and natural guardian, repeat and reallege paragraphs 1 through 16 above.

31. Defendants participated in an enterprise, or conspired or endeavored to so participate, through a pattern of criminal activity in violation of Florida Statute section 772.103(3)-(4).

32. Defendants engaged in this pattern of criminal activity by engaging in at least two of the following incidents of criminal activity with the same or similar intents, results, accomplices, victims, and methods of commission within a 5 year period:

 a. Procuring for prostitution, or causing to be prostituted, any person who is under the age of 18 years in violation of Florida Statute section 796.03;

 b. Soliciting, inducing, enticing, or procuring another to commit prostitution, lewdness, or assignation in violation of Florida Statute section 796.07(2)(f), or aiding, abetting or participating in such acts in violation of Florida Statute section 796.07(2)(h);

 c. Knowingly recruiting, enticing, harboring, transporting, providing, or obtaining by any means a person, knowing that force, fraud, or coercion will be used to cause that person to engage in prostitution in violation of Florida Statute section 796.045; or

 d. Forcing, compelling, or coercing another to become a prostitute in violation of Florida Statute section 796.04.

33. Under Defendants' plan, scheme and enterprise, Defendant Epstein paid Defendant Robson to repeatedly find and bring him underage girls, who were delivered to Epstein by

Page 7 of 9

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

Defendants Robson and Kellen, in order for Epstein to solicit, induce, coerce, entice, compel or force such girls to engage in acts of prostitution and/or lewdness.

34. Plaintiff Jane Doe was the victim of Defendants' plan, scheme and enterprise. Defendant Robson took Jane Doe to Epstein's home under the pretense that Jane Doe would be paid to give Epstein a massage. Defendant Kellen delivered Jane Doe to a room with a message table and told that Epstein would be in shortly. Jane Doe was alone in the room when Epstein arrived. Epstein told her to remove her clothes and left the room. When Epstein returned he was wearing only a towel. He removed his towel, and laid down on his stomach on the message table. Epstein again told Jane Doe remove her clothes. In shock, fear and trepidation, Jane Doe complied, removing her clothes except for her panties and bra. Shortly after starting to rub Epstein's back, Epstein told Jane Doe to sit on his back. Jane Doe, out of fear and trepidation, complied. After a period of time Epstein got up from the table and went behind the door. For several minutes Jane Doe heard loud noises and moans and believes that Epstein was masturbating. Thereafter Epstein, naked, returned to the message table and laid face up on the table. Epstein than told Jane Doe to continue with the message and told her to sit on top of him. Out of fear and trepidation she complied. As Jane rubbed Epstein's chest Epstein began to use a vibrator on Jane Doe's vagina. Thereafter Epstein began to digitally stimulate and attempt to penetrate Jane Doe's vagina. At this same time, with his other hand, Epstein was masturbating. Upon reaching orgasm Epstein got up from the message table and told Jane Doe to write down her name and phone number and than left the room.

35. Jane Doe was then able to get dressed, leave the room and go back down the stairs and into the kitchen. Epstein, Robson and Kellen were waiting for Jane Doe. Epstein paid Jane Doe

This fax was received by GFI FAXmaker fax server. For more information, visit http://www.gfi.com

$300. Ms. Robson was paid $200 by Epstein for bringing Jane to him.  Ms. Robson brought Jane Doe home.

WHEREFORE, Plaintiff Jane Doe, by and through her Mother, as parent and natural guardian, demands judgment against Defendants Jeffrey Epstein, Haley Robson, and Sarah Kellen for compensatory damages, treble damages under Florida Statute section 772.104, costs and attorney's fees under Florida Statute section 772.104, and such other and further relief as this Court deems just and proper. Further, Plaintiff reserves the right to amend this Complaint to add a claim for punitive damages pursuant to Florida Law.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial in this action.

Dated: March _6_, 2008

Respectfully submitted,

RICCI–LEOPOLD, P.A.
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL  33410
Phone: 561-684-6500
Fax:    561-697-2383

By: _____
THEODORE J. LEOPOLD
Florida Bar No. 705608

Page 9 of 9

<u>Civil Cover Sheet</u>

Form 1.997 Civil Cover Sheet

The civil cover sheet and the information contained herein neither replace nor supplement
the filing and service of pleadings or other papers as required by law.  This form is
required for the use of the Clerk of the Court for the purpose of reporting judicial
workload data pursuant to Florida Statute 25.075.   **50 2008 CA 0 0 65 9 6 XXXX MB**

1.     CASE STYLE

CIRCUIT COURT

JANE DOE, by and through JANE DOE'S MOTHER
As parent and natural guardian,

v.

JEFFREY EPSTEIN, HALEY ROBSON and
SARAH KELLEN,

2.     TYPE OF CASE:
       Torts:

                                        Professional Malpractice
                                        Products Liability
                                        Auto Negligence
                                X Other Negligence

        Other Civil:                        Contracts
                                          Condominium
                                          Real Property/Mortgage Foreclosure
                                          Eminent Domain
                                          Other

3.     IS JURY TRIAL DEMANDED IN COMPLAINT?

                                          YES
                                          NO

DATED THIS ___6___ day of March, 2008.

RICCI~LEOPOLD, P.A.
2925 PGA Blvd.
Suite 200
Palm Beach Gardens, FL 33410
Phone: (561) 684-6500
Fax:   (561) 697-2383

By: _____
    THEODORE J. LEOPOLD
    Florida Bar No. 705608

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

IN THE CIRCUIT COURT OF THE
15TH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY
FLORIDA

CASE NO: 50 2008 CA 006596 XXXX
MB AB

JANE DOE, by and through JANE DOE'S
MOTHER, as parent and natural guardian,

Plaintiff,

vs.

JEFFREY EPSTEIN, HALEY ROBSON and
SARAH KELLEN,

Defendants.

_____/

## SUMMONS

## PERSONAL SERVICE ON A NATURAL PERSON

TO DEFENDANT:

JEFFREY EPSTEIN
457 Madison Avenue
4th Floor
New York, New York

### IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the Clerk of this Court.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court.  There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the "Plaintiff/ Plaintiff's Attorney" named below.

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

"In accordance with the Americans with Disabilities Act, persons in need of a special accommodation to participate in this proceeding shall, within a reasonable time prior to any proceeding, contact the Administrative Office of the Court, 205 North Dixie Highway, Room 5.2500, West Palm Beach, FL 33401, telephone (561)355-2431, 1-800-955-8771 (TDD), or 1-800-955-8770 (V), via Florida Relay Service".

THEODORE J. LEOPOLD, ESQUIRE
RICCI~LEOPOLD, P.A.
2925 PGA Boulevard
Suite 200
Palm Beach Gardens, FL  33410
(561) 684-6500

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE:  You are commanded to serve this Summons and a copy of the complaint/petition in this lawsuit on the above named defendant(s).

DATED ON _____ MAR ...

/s/ SHARON BOCK SANDRA CUEVA
CLERK OF THE CIRCUIT COURT

By: _____
        Deputy Clerk

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numbero del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

176 of 316

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

"De acuerdo con el Acto ó Decreto de los Americansos con Impedimentos, Inhabilitados, personas en necesidad del servicio special para participar en este procedimiento deberán, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la officina Administratativa de la Corte, 205 North Dixie Highway, oficina 5.2500, West Palm Beach, FL 33401, Téléfono (561) 355-2431, 1-800-955-8771 (TDD) ó 1-800-955-8770 (V), Via Florida Relay Service".

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

En accordance avec la Loi des "Americans With Disabilities". Les personnes en besoin d'une accommodation speciale pour participer a ces procedures doivent, dans un temps raisonable, avant d'entreprendre aucune autre démarche, contacter l'office administrative de la Court situé au 5.2500, 205 North Dixie Highway, West Palm Beach, FL 33401 le telephone (561)355-2431 ou 1-800-955-8771 (TDD) ou 1-800-955-8770 (V) Via Florida Relay Service.

## IMPORTANT

Dapré ako ki fet avek Americans With Disabilities Act, tout moun ki ginyin yun bézwen éspésiyal pou akomodasiyon pou yo patisipé nan pwogram sa-a dwé, nan yun rézonab avan ninpot aranjman kapab fet, yo dwé kontakté Administrative Office of the Court, ki nan niméro 205 North Dixie Highway, Cham niméro 5.2500 West Palm Beach, Florida 33401 téléfon nan sé (561)355-2431 oubyen 1-800-955-8771 (T.D.D. oubyen 1-800-955-8770 (V) an pasan pa Florida Relay Service.

Page 3 of 3

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

IN THE CIRCUIT COURT OF THE
15TH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY
FLORIDA

CASE NO: 50 2008 CA 006596 XXXX
MB AB

JANE DOE, by and through JANE DOE'S
MOTHER, as parent and natural guardian,

        Plaintiff,

vs.

JEFFREY EPSTEIN, HALEY ROBSON and
SARAH KELLEN,

        Defendants.
                      /

## SUMMONS

### PERSONAL SERVICE ON A NATURAL PERSON

TO DEFENDANT:

    HALEY ROBSON
    12247 72ND COURT NORTH
    ROYAL PALM BEACH, FL

### IMPORTANT

    A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

    If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the "Plaintiff/ Plaintiff's Attorney" named below.

"In accordance with the Americans with Disabilities Act, persons in need of a special accommodation to participate in this proceeding shall, within a reasonable time prior to any proceeding, contact the Administrative Office of the Court, 205 North Dixie Highway, Room 5.2500, West Palm Beach, FL 33401, telephone (561)355-2431, 1-800-955-8771 (TDD), or 1-800-955-8770 (V), via Florida Relay Service".

THEODORE J. LEOPOLD, ESQUIRE
RICCI-LEOPOLD, P.A.
2925 PGA Boulevard
Suite 200
Palm Beach Gardens, FL 33410
(561) 684-6500

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the complaint/petition in this lawsuit on the above named defendant(s).

MAR 1 8 2008

DATED ON _____, 2008.



SHARON BOCK
CLERK OF THE CIRCUIT COURT

By: _____
Deputy Clerk
SANDRA CUEVA

IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la

Page 2 of 3

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

"De acuerdo con el Acto ó Decreto de los Americansos con Impedimentos, Inhabilitados, personas en necesidad del servicio special para participar en este procedimiento deberán, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la officina Administratativa de la Corte, 205 North Dixie Highway, oficina 5.2500, West Palm Beach, FL 33401, Teléfono (561) 355-2431, 1-800-955-8771 (TDD) ó 1-800-955-8770 (V), Via Florida Relay Service".

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

En accordance avec la Loi des "Americans With Disabilities". Les personnes en besoin d'une accommodation speciale pour participer a ces procedures doivent, dans un temps raisonable, avant d'entreprendre aucune autre démarche, contacter l'office administrative de la Court situé au 5.2500, 205 North Dixie Highway, West Palm Beach, FL 33401 le telephone (561)355-2431 ou 1-800-955-8771 (TDD) ou 1-800-955-8770 (V) Via Florida Relay Service.

## IMPORTANT

Dápré ako ki fet avek Americans With Disabilities Act, tout moun ki ginyin yun bézwen éspésiyal pou akomodasiyon pou yo patisipé nan pwogram sa-a dwé, nan yun rézonab avan ninpot aranjman kapab fet, yo dwé kòntakté Administrative Office of the Court, ki nan niméro 205 North Dixie Highway, Cham niméro 5.2500 West Palm Beach, Florida 33401 téléfon nan sé (561)355-2431 oubyen 1-800-955-8771 (T.D.D. oubyen 1-800-955-8770 (V) an pasan pa Florida Relay Service.

Page 3 of 3

182 of 316

IN THE CIRCUIT COURT OF THE
15TH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY
FLORIDA

CASE NO: 50 2008 CA 006596 XXXX
MB AB

JANE DOE, by and through JANE DOE'S
MOTHER, as parent and natural guardian,

            Plaintiff,

vs.

JEFFREY EPSTEIN, HALEY ROBSON and
SARAH KELLEN,

            Defendants.
_____/

## SUMMONS

## PERSONAL SERVICE ON A NATURAL PERSON

TO DEFENDANT:

        SARAH KELLEN,
        301 East 66th Street
        Apt. 10N
        New York, New York

## IMPORTANT

        A lawsuit has been filed against you. You have 20 calendar days after this summons is
served on you to file a written response to the attached complaint/petition with the Clerk of this
Court. A phone call will not protect you. Your written response, including the case number given
above and the names of the parties, must be filed if you want the Court to hear your side of the case.
If you do not file your response on time, you may lose the case, and your wages, money, and
property may thereafter be taken without further warning from the Court. There are other legal
requirements. You may want to call an attorney right away. If you do not know an attorney, you
may call an attorney referral service or a legal aid office (listed in the phone book).

        If you choose to file a written response yourself, at the same time you file your written
response to the Court you must also mail or take a copy of your written response to the "Plaintiff/
Plaintiff's Attorney" named below.

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

"In accordance with the Americans with Disabilities Act, persons in need of a special accommodation to participate in this proceeding shall, within a reasonable time prior to any proceeding, contact the Administrative Office of the Court, 205 North Dixie Highway, Room 5.2500, West Palm Beach, FL 33401, telephone (561)355-2431, 1-800-955-8771 (TDD), or 1-800-955-8770 (V), via Florida Relay Service".

THEODORE J. LEOPOLD, ESQUIRE
RICCI-LEOPOLD, P.A.
2925 PGA Boulevard
Suite 200
Palm Beach Gardens, FL 33410
(561) 684-6500


THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the complaint/petition in this lawsuit on the above named defendant(s).

DATED ON _____ MAR 1 8 2008 , 2008.

SHARON BOCK
CLERK OF THE CIRCUIT COURT

SANDRA CUEVA

By: _____
Deputy Clerk


## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numbero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.


Page 2 of 3

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

"De acuerdo con el Acto ó Decreto de los Americansos con Impedimentos, Inhabilitados, persones en necesidad del servicio special para participar en este procedimiento deberán, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la officina Administrativa de la Corte, 205 North Dixie Highway, oficina 5.2500, West Palm Beach, FL 33401, Teléfono (561) 355-2431, 1-800-955-8771 (TDD) ó 1-800-955-8770 (V), Via Florida Relay Service".

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

En accordance avec la Loi des "Americans With Disabilities". Les personnes en besoin d'une accommodation speciale pour participer a ces procedures doivent, dans un temps raisonable, avant d'entreprendre aucune autre démarche, contacter l'office administrative de la Court situé au 5.2500, 205 North Dixie Highway, West Palm Beach, FL 33401 le telephone (561)355-2431 ou 1-800-955-8771 (TDD) ou 1-800-955-8770 (V) Via Florida Relay Service.

## IMPORTANT

Dapré ako ki fet avek Americans With Disabilities Act, tout moun ki ginyin yun bézwen éspésiyal pou akomodasiyon pou yo patisipé nan pwogram sa-a dwé, nan yun rézonab avan ninpot aranjman kapab fet, yo dwé kontakté Administrative Office of the Court, ki nan niméro 205 North Dixie Highway, Cham niméro 5.2500 West Palm Beach, Florida 33401 téléfon nan sé (561)355-2431 oubyen 1-800-955-8771 (T.D.D. oubyen 1-800-955-8770 (V) an pasan pa Florida Relay Service.

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

185 of 316

# RETURN OF SERVICE

County of Palm Beach                                    Circuit Court

State of Florida

Case Number: 502008CA006596XXXXMBAB

Plaintiff:
JANE DOE BY AND THROUGH JANE DOE'S MOTHER, AS PARENT
AND NATURAL GUARDIAN

vs.

Defendant:
JEFFREY EPSTEIN, HALEY ROBSON AND SARAH KELLEN

For:
Ted Leopold, Esquire
RICCI~LEOPOLD, P.A.
2925 Pga Blvd. Suite 200
Palm Beach Gardens, FL 33410

Received by C.W. SERVICES on the 19th day of March, 2008 at 9:20 am to be served on HALEY ROBSON, 12247
72nd COURT NORTH, ROYAL PALM BEACH, FL

I, Alan J. Cutler, do hereby affirm that on the 21st day of March, 2008 at 8:34 pm, I:

SERVED BY RESIDENTIAL SUBSTITUTION by leaving a true copy of this Summons and Complaint with the date
and time of service endorsed thereon by me. This address is the above named subject's usual place of abode. The
court document was served to a person residing at this numerical who was verified to be 15 years of age or older
and was identified as TOMMY ROBSON/FATHER and informing this subject of the contents thereof.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server in
good standing in the judicial circuit in which the process was served.

Alan J. Cutler
Court Officer #843

C.W. SERVICES
4908 Grassleaf Drive
Palm Beach Gardens, FL 33418
(561) 630-4866

Our Job Serial Number: 2008034295

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5j

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

*3 42 95*

IN THE CIRCUIT COURT OF THE
15TH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY
FLORIDA

CASE NO: 50 2008 CA 006596 XXXX
MB AB

JANE DOE, by and through JANE DOE'S
MOTHER, as parent and natural guardian,

      Plaintiff,

vs.

JEFFREY EPSTEIN, HALEY ROBSON and
SARAH KELLEN,

      Defendants.

_____/

## SUMMONS

### PERSONAL SERVICE ON A NATURAL PERSON

TO DEFENDANT:

    HALEY ROBSON
    12247 72ND COURT NORTH
    ROYAL PALM BEACH, FL

### IMPORTANT

    A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

    If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

"In accordance with the Americans with Disabilities Act, persons in need of a special accommodation to participate in this proceeding shall, within a reasonable time prior to any proceeding, contact the Administrative Office of the Court, 205 North Dixie Highway, Room 5.2500, West Palm Beach, FL 33401, telephone (561)355-2431, 1-800-955-8771 (TDD), or 1-800-955-8770 (V), via Florida Relay Service".

THEODORE J. LEOPOLD, ESQUIRE
RICCI~LEOPOLD, P.A.
2925 PGA Boulevard
Suite 200
Palm Beach Gardens, FL 33410
(561) 684-6500


THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE:  You are commanded to serve this Summons and a copy of the complaint/petition in this lawsuit on the above named defendant(s).

DATED ON _____ MAR 1 8 2008 , 2008.



SHARON BOCK
CLERK OF THE CIRCUIT COURT

By: _____
Deputy Clerk
SANDRA CUEVA

IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la

Page 2 of 3

189 of 316

persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

"De acuerdo con el Acto ó Decreto de los Americansos con Impedimentos, Inhabilitados, personas en necesidad del servicio special para participar en este procedimiento deberán, dentro de un tiempo razonable, antes de cualquier procedimiento, ponerse en contacto con la officina Administratativa de la Corte, 205 North Dixie Highway, oficina 5.2500, West Palm Beach, FL 33401, Teléfono (561) 355-2431, 1-800-955-8771 (TDD) ó 1-800-955-8770 (V), Via Florida Relay Service".

## IMPORTANT

Des poursuites judiciares ont été entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe nupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en méme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

En accordance avec la Loi des "Americans With Disabilities". Les personnes en besoin d'une accommodation speciale pour participer a ces procedures doivent, dans un temps raisonable, avant d'entreprendre aucune autre démarche, contacter l'office administrative de la Court situé au 5.2500, 205 North Dixie Highway, West Palm Beach, FL 33401 le telephone (561)355-2431 ou 1-800-955-8771 (TDD) ou 1-800-955-8770 (V) Via Florida Relay Service.

## IMPORTANT

Dápré ako ki fet avek Americans With Disabilities Act, tout moun ki ginyin yun bézwen éspésiyal pou akomodasiyon pou yo patisipé nan pwogram sa-a dwé, nan yun rézonab avan ninpot aranjman kapab fet, yo dwé kontakté Administrative Office of the Court, ki nan niméro 205 North Dixie Highway, Cham niméro 5.2500 West Palm Beach, Florida 33401 téléfon nan sé (561)355-2431 oubyen 1-800-955-8771 (T.D.D. oubyen 1-800-955-8770 (V) an pasan pa Florida Relay Service.

Page 3 of 3

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT IN
AND FOR PALM BEACH COUNTY FLORIDA

JANE DOE, by and through JANE
DOE'S MOTHER, as parent and natural
guardian

       Plaintiff,

vs.

JEFFREY EPSTEIN, HALEY
ROBSON, and SARAH KELLEN

       Defendants.

CASE NO. 50 2008 CA006596
XXXX MB

FILED 08 APR 10 PM 4:12
SHARON R. BOCK, CLERK
PALM BEACH COUNTY, FL
CIRCUIT CIVIL 4

## MOTION TO QUASH SERVICE OF PROCESS

COMES NOW HALEY ROBSON, by and through her undersigned attorneys,
and files this Motion to Quash Service of Process, and as grounds therefore would
state as follows:

    1.    Florida Statute §48.031(1) allows service of original process
by delivering a copy of it to the person to be served or by leaving copies at his or her
usual place of abode with any person residing there who is fifteen years or older and
informing that person of their contents.

    2.    An agent for counsel for the Plaintiff purports to have served
HALEY ROBSON with a copy of the Complaint via residential substitution on March
21, 2008 at 8:34 p.m.  (A true and correct copy of the Return of Service is attached

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

CASE NO. 50 2008 CA006596 XXXX MB

hereto as Exhibit A.) As the Court can see, the agent for the Plaintiff who served the Summons and Complaint purports to have served the same on Tommy Robson, who is identified as Haley Robson's father. Said service was purportedly made at 12247 72nd Court North, Royal Palm Beach, Florida, located in Palm Beach County.

3.    On March 21, 2008, Haley Robson's usual place of abode was not 12247 72nd Court North, Royal Palm Beach, Florida, in Palm Beach County. Rather, Haley Robson's usual place of abode on March 21, 2008, was an entirely different location. Haley Robson did not authorize anyone, including Tommy Robson, to accept service of process on her behalf. Therefore, this service was not proper and was ineffective.

4.    It is well recognized in Florida that a person's usual place of abode is defined as the place where the person is actually living at the time of service. *See Shurman v. Atlantic Mortgage and Investment Corp.*, 795 So. 2d 952 (Fla. 2001). In the *Shurman* opinion, the Supreme Court of Florida also confirmed that "statutes governing service of process are to be strictly construed and enforced." *Id. at 954.*

5.    There are different schools of thought as to the most appropriate way to challenge service of process. There is also some confusion with regard to whether filing a motion other than a Motion to Quash Service of Process waives one's right

2

193 of 316        This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

CASE NO. 50 2008 CA006596 XXXX MB

to move to quash service of process. Therefore, Haley Robson files this Motion to Quash Service of Process in lieu of any other type of motion or responsive pleading pursuant to the Fourth District Court of Appeal's opinion in *Baraban v. Sussman*, which holds that the "preferable manner of presenting a defense of insufficiency of service of process . . .is by a Motion to Quash such allegedly insufficient service of process rather than by a Motion to Dismiss the Complaint." *Baraban v. Sussman*, 439 So. 2d 1046, 1047 (Fla. 4th DCA 1983).

6.    Haley Robson reserves the right to supplement this motion with evidence to support it.

**WHEREFORE**, Haley Robson respectfully moves this Honorable Court for the entry of an Order granting Haley Robson's Motion to Quash the Service of Process.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via regular mail to **Theodore J. Leopold, Esq.**, Ricci-Leopold, P.A., 2925 PGA Boulevard, Suite 200, P.O. Box 2946, Palm Beach Gardens, FL 33410, this 10th day of April, 2008.

3

MCINTOSH, SAWRAN, PELTZ, & CARTAYA, P.A. • ATTORNEYS AT LAW • 1401 FORUM PLACE • SUITE 1110 • WEST PALM BEACH, FL 33401
TELEPHONE (561) 682-3301          FACSIMILE (561) 682-3206

194 of 316                This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

CASE NO. 50 2008 CA006596 XXXX MB

McINTOSH, SAWRAN, PELTZ
& CARTAYA, P.A.
Centurion Tower
1601 Forum Place, Suite 1110
West Palm Beach, Florida 33401
Telephone: (561) 682-3202
Facsimile: (561) 682-3206

By: _____
    DOUGLAS M. McINTOSH
    Florida Bar No. 325597
    **JASON A. McGRATH**
    Florida Bar No. 97349

4

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

## RETURN OF SERVICE

State of Florida                County of Palm Beach                    Circuit Court

Case Number: 502008CA008596XXXXMBAB

Plaintiff:
JANE DOE BY AND THROUGH JANE DOE'S MOTHER, AS PARENT
AND NATURAL GUARDIAN

vs.

Defendant:
JEFFREY EPSTEIN, HALEY ROBSON AND SARAH KELLEN

For:
Ted Leopold, Esquire
RICCI-LEOPOLD, P.A
2925 Pga Blvd. Suite 200
Palm Beach Gardens, FL 33410

Received by C.W. SERVICES on the 19th day of March, 2008 at 9 20 am to be served on HALEY ROBSON. 12247
72nd COURT NORTH, ROYAL PALM BEACH, FL.

I, Alan J. Cutler, do hereby affirm that on the 21st day of March, 2008 at 8:34 pm, I:

SERVED BY RESIDENTIAL SUBSTITUTION by leaving a true copy of this Summons and Complaint with the date
and time of service endorsed thereon by me. This address is the above named subject's usual place of abode. The
court document was served to a person residing at this numerical who was verified to be 15 years of age or older
and was identified as TOMMY ROBSON/FATHER and informing this subject of the contents thereof

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server in
good standing in the judicial circuit in which the process was served.

Alan J. Cutler
Court Officer #843

C.W. SERVICES
4908 Grassleaf Drive
Palm Beach Gardens, FL 33418
(561) 630-4868

Our Job Serial Number: 2008034295

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.0j

DEFENDANT'S
EXHIBIT
A

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

From: ui      wn     Page: 44/51     Date: 5/29/2008 12:09:    M

# RETURN OF SERVICE

State of Florida                County of Palm Beach                    Circuit Court

Case Number: 502008CA008596XXXXMBAB

Plaintiff:
JANE DOE BY AND THROUGH JANE DOE'S MOTHER, AS PARENT
AND NATURAL GUARDIAN

vs.

Defendant:
JEFFREY EPSTEIN, HALEY ROBSON AND SARAH KELLEN

For:
Ted Leopold, Esquire
RICCI~LEOPOLD, P.A.
2925 Pga Blvd  Suite 200
Palm Beach Gardens, FL  33410

Received by C W  SERVICES on the 14th day of May, 2008 at 3:59 pm to be served on JEFFREY EPSTEIN. 358
EL BRILLO WAY. PALM BEACH FL. 33480

I, Alan  J  Cutler, do hereby affirm that on the 16th day of May, 2008 at 9:15 am, I:

SERVED BY RESIDENTIAL SUBSTITUTION by leaving a true copy of this **Summons and Complaint** with the date
and time of service endorsed thereon by me  This address is the above named subject's usual place of abode  The
court document was served to a person residing at this numerical who was verified to be 15 years of age or older
and was identified as **JANUSZ BANASIAK (LIVE IN HOUSE MANAGER)** and informing this subject of the contents
thereof

**Military Status:** Based upon inquiry of party served, defendant is not in the military service of the United States.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server in
good standing in the judicial circuit in which the process was served

Alan  J. Cutler
Court Officer #843

C.W. SERVICES
4908 Grassleaf Drive
Palm Beach Gardens, FL  33418
(561) 630-4866

Our Job Serial Number: 2008035775

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5 5j

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

*34296*
*97*

IN THE CIRCUIT COURT OF THE
15TH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY
FLORIDA

CASE NO: 50 2008 CA 006596 XXXX
MB AB

JANE DOE, by and through JANE DOE'S
MOTHER, as parent and natural guardian,

        Plaintiff,

vs.

JEFFREY EPSTEIN, HALEY ROBSON and
SARAH KELLEN,

        Defendants.
_____/

## SUMMONS

### PERSONAL SERVICE ON A NATURAL PERSON

TO DEFENDANT:

    JEFFREY EPSTEIN
    457 Madison Avenue
    4th Floor
    New York, New York  *10022*

### IMPORTANT

    A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

    If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the "Plaintiff/ Plaintiff's Attorney" named below.

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

"In accordance with the Americans with Disabilities Act, persons in need of a special accommodation to participate in this proceeding shall, within a reasonable time prior to any proceeding, contact the Administrative Office of the Court, 205 North Dixie Highway, Room 5.2500. West Palm Beach, FL 33401, telephone (561)355-2431, 1-800-955-8771 (TDD), or 1-800-955-8770 (V), via Florida Relay Service".

THEODORE J. LEOPOLD, ESQUIRE
RICCI~LEOPOLD, P.A.
2925 PGA Boulevard
Suite 200
Palm Beach Gardens, FL 33410
(561) 684-6500

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons and a copy of the complaint/petition in this lawsuit on the above named defendant(s).

DATED ON _____ MAR

SHARON BOCK, SANDRA CUEVA
CLERK OF THE CIRCUIT COURT

By: _____
Deputy Clerk

<u>IMPORTANTE</u>

Usted ha sido demandado legalmente. Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numbero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

200 of 316

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com